1  KAREN MATTESON, Cal. Bar No. 102103
   Email: mattesonk@sec.gov
2  DIANA K. TANI, Cal. Bar No. 136656
   Email: tanik@sec.gov
3  SPENCER E. BENDELL, Cal. Bar No. 181220
   Email: bendells@sec.gov
4  ROBERT H. CONRRAD, Cal. Bar. No. 199498
   Email: conrradr@sec.gov

5  Attorneys for Plaintiff
   Securities and Exchange Commission
6  Rosalind Tyson, Acting Regional Director
   Michele Wein Layne, Associate Regional Director
7  5670 Wilshire Boulevard, 11th Floor
   Los Angeles, California 90036
8  Telephone: (323) 965-3998
   Facsimile:  (323) 965-3908
9

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12  SECURITIES AND EXCHANGE          Case No. SACV 08 - 0241 CJC (MLGx)
13  COMMISSION,
                                     COMPLAINT FOR VIOLATIONS OF
14           Plaintiff,              THE FEDERAL SECURITIES LAWS

15       vs.

16  TIMOTHY N. JENSON and TDH
    ENTERPRISES, LLC,
17
             Defendants.
18

19       Plaintiff Securities and Exchange Commission ("Commission") alleges as

20  follows:

21                    JURISDICTION AND VENUE

22       1.      This Court has jurisdiction over this action pursuant Sections 21(d)(1),

23  21(d)(2), 21(d)(3)(A), 21(e) and 27 of the Securities Exchange Act of 1934

24  ("Exchange Act"), 15 U.S.C. §§ 78u(d)(1), 78u(d)(2), 78u(d)(3)(A), 78u(e) &

25  78aa.  Defendants have, directly or indirectly, made use of the means or

26  instrumentalities of interstate commerce, of the mails, or of the facilities of a

27  national securities exchange, in connection with the transactions, acts, practices,

28  and courses of business alleged in this Complaint.

1    2.     Venue is proper in this district pursuant to Section 27 of the Exchange

2    Act, 15 U.S.C. § 78aa, because certain of the transactions, acts, practices, and

3    courses of conduct constituting violations of the federal securities laws occurred

4    within this district and because the Defendants inhabit and transact business in this

5    district.

6                             **SUMMARY**

7    3.     Defendant Timothy N. Jenson, the former CEO, CFO, president,

8    assistant corporate secretary, and a director of Merisel, Inc., made numerous

9    material misstatements and omissions in Merisel's Commission filings and press

10    releases, from August 2004 to November 2004, as part of a scheme to loot the

11    company in two separate but similar self-dealing transactions in which he "sold"

12    Merisel assets to entities he secretly controlled.

13    4.     One transaction involved Jenson's sale of certain Merisel software

14    licensing assets and real property to D&H Services, LLC, an undisclosed related

15    party that he controlled.  The second transaction involved Jenson's sale of RKM

16    Partners, an inoperative Merisel subsidiary that held over $952,000 in assets

17    comprised primarily of convertible promissory notes, for just $1,000, to Defendant

18    TDH Enterprises, another Jenson-controlled entity.

19    5.     Jenson misrepresented or failed to disclose the related party nature of

20    these transactions in various filings with the Commission, including Merisel's

21    Form 10-Q for the period ended June 30, 2004, an earnings press release, various

22    Forms 8-K filed in August and November 2004, and a proxy statement filed on

23    October 1, 2004.  Jenson also failed to ensure proper accounting for the $2.6

24    million loss resulting from the sale to D&H Services in a third quarter earnings

25    press release and in a November 8, 2004 Form 8-K that announced Merisel's third

26    quarter earnings.

27    ///

28    ///

6.     In carrying out and covering up his fraud, Jenson falsified internal Merisel records, circumvented internal controls, and made material misrepresentations and omissions to Merisel's auditors.

7.     As a result of his conduct, Jenson violated Sections 10(b), 13(b)(5), and 14(a) of the Exchange Act, 15 U.S.C. §§ 78j(b), 78m(b)(5) & 78n(a), and Rules 10b-5, 13a-14, 13b2-1, 13b2-2, and 14a-9 thereunder, 17 C.F.R. §§ 240.10b-5, 240.13a-14, 240.13b2-1, 240.13b2-2 & 240.14a-9, and aided and abetted Merisel's violations of Sections 13(a), 13(b)(2)(A), and 13(b)(2)(B) of the Exchange Act, 15 U.S.C. §§ 78m(a), 78m(b)(2)(A) & 78m(b)(2)(B), and Rules 12b-20, 13a-11, and 13a-13 thereunder, 17 C.F.R. §§ 240.12b-20, 240.13a-11 & 240.13a-13.  TDH Enterprises, which Jenson controlled, aided and abetted Jenson's violations of Sections 10(b) and 14(a) of the Exchange Act and Rules 10b-5 and 14a-9 thereunder, and Merisel's violations of Section 13(a) of the Exchange Act and Rules 12b-20 and 13a-13 thereunder.

8.     The Commission seeks a permanent injunction and civil penalties against Jenson and TDH Enterprises, as well as an officer and director bar against Jenson.

### THE DEFENDANTS

9.     **Timothy N. Jenson** resides in Los Alamitos, California.  Jenson joined Merisel, Inc. in 1993 as its treasurer, and he became its CFO in 1998.  In 2000, Jenson became Merisel's executive vice president.  In 2001, Jenson became the CEO, president, and a director of Merisel.  Jenson resigned from his positions at Merisel effective November 22, 2004.

10.     **TDH Enterprises, LLC**, is a California limited liability company, controlled by Jenson and located in Los Alamitos, California.  Its sole member is the Jenson Family Trust, of which Jenson is the trustee.

/ / /

/ / /

1  <u>**OTHER RELEVANT PARTIES**</u>

2  11.  **Merisel, Inc.** is a Delaware corporation that, in 2004, was based in El

3  Segundo, California and was engaged in the software licensing business.  At all

4  relevant times, Merisel's common stock was registered pursuant to Section 12(g)

5  of the Exchange Act, 15 U.S.C. §78l(g), and was quoted on the Nasdaq National

6  Market.

7  12.  **D&H Services, LLC** is a California limited liability company

8  organized in July 2004.  D&H Services' sole member is a close friend of Jenson.

9  Jenson controlled D&H Services.

10  **<u>THE FRAUDULENT SCHEME</u>**

11  <u>**JENSON SECRETLY ORCHESTRATES THE SALE OF MERISEL'S SOFTWARE**</u>

12  <u>**LICENSING ASSETS TO AN ENTITY HE CONTROLS**</u>

13  13.  As part of its software licensing business, Merisel entered into license

14  agreements with software developers to distribute software to the retail market.  In

15  2004, the software licensing business was Merisel's only revenue-generating

16  business.  By July 2004, Merisel's primary software supplier notified Merisel that

17  it was discontinuing its business relationship.  Accordingly, Merisel's board

18  unanimously authorized Merisel's management to negotiate a sale of the software

19  licensing business with potential purchasers.

20  14.  Jenson proposed that Merisel sell the software licensing business to

21  D&H Services, an entity he had recently formed and secretly controlled, based on

22  terms he purportedly negotiated at arm's-length.  To ensure his control of D&H

23  Services remained secret, Jenson acted as the sole point of contact between Merisel

24  and D&H Services.  In a departure from past practice, Jenson instructed lower

25  level Merisel employees to provide everything to him first, and he would forward

26  the information to the purchaser.

27  15.  Jenson acted as an undisclosed D&H Services principal when D&H

28  Services purchased certain assets and assumed certain liabilities from Merisel.

4

1   Jenson reviewed and/or drafted various internal D&H Services documents,
2   including emails and attachments, such as buyer schedules and purchase price
3   allocations related to the D&H transaction.  Jenson forwarded those documents to
4   Merisel's vice president of finance, and falsely told her that D&H Services had
5   sent them to him.  Jenson helped find legal counsel to represent D&H Services in
6   the transaction.  Jenson continued his control of D&H Services well after the
7   closing date of the D&H transaction, as he continued to draft and/or review
8   documents on behalf of D&H Services.

9        16.    As part of the D&H transaction, Merisel would sell its software
10  licensing business (comprised mostly of accounts receivable), a parcel of real
11  estate located in Cary, North Carolina (the "Cary Property"), and a promissory
12  note secured by a building (collectively, the "Software Licensing Assets"), and
13  assign the related liabilities to D&H Services.  The purchase price paid by D&H
14  Services would be equal to the Software Licensing Assets' book value less the
15  value of the assumed liabilities.  Merisel's board of directors approved the sale
16  under these terms.  When the deal closed on August 18, 2004, D&H Services,
17  pursuant to the agreed-upon terms, paid Merisel $727, which reflected the
18  difference between $5,785,015 in transferred assets and $5,784,288 in transferred
19  liabilities.  As part of the same agreement, Merisel agreed to pay D&H Services
20  any accounts receivables Merisel subsequently collected on D&H Services' behalf,
21  which eventually amounted to $1.7 million.

22       17.    Jenson took advantage of his position at Merisel to deflate the D&H
23  transaction's purchase price by at least $2.6 million.  Jenson accomplished this by
24  overstating the value of transferred reserves (such as over-accrued bad debt
25  reserves) by about $900,000 and liabilities (such as accrued expenses for amounts
26  owed, but that Jenson knew were not likely to be collected) by over $1.7 million.
27  As Merisel's CEO and CFO, Jenson overrode the vice-president of finance with
28  / / /

1   respect to determining the final book value of the reserves and liabilities
2   transferred to D&H Services.

3       18.    In early August, Jenson directed Merisel's vice president of finance
4   not to write down certain liabilities that were being included in the D&H
5   transaction when, by Merisel's own accounting policies, those liabilities had little
6   chance of being paid and would be reversed soon.

7       19.    On at least two occasions, Jenson falsified documents in order to
8   cover up his fraudulent scheme.  First, Jenson created a memorandum, dated June
9   9, 2004, addressed to Merisel's board of directors, which he used to "paper the
10  file" purportedly disclosing the existence of an agreement that Jenson had entered
11  into on Merisel's behalf to sell the Cary Property to a third party for $4.4 million.
12  This memorandum, however, was never provided to the board.  As a result, as part
13  of the D&H transaction, Merisel's board approved the sale of the Cary Property to
14  D&H Services for its asset book value of about $900,000.

15      20.    Second, Jenson falsified information contained in the August 10, 2004
16  board meeting minutes to reflect that he abstained from the vote to approve the
17  D&H transaction.  As assistant corporate secretary, Jenson recorded the meeting
18  minutes.  Jenson typically wrote the first draft of the minutes and gave them to a
19  Merisel employee, who did not attend the board meetings, for her to finalize.
20  Jenson inserted the following language in the board minutes concerning the
21  board's vote to approve the D&H transaction: "[a]s advised by outside legal
22  counsel, Mr. Jenson abstained from the vote to avoid any potential conflict of
23  interest."  In fact, Jenson did not abstain from the vote.

24      21.    Throughout the transaction, Jenson misled Merisel employees and
25  board members to believe that D&H Services, which he in fact controlled, was the
26  same entity as or was affiliated with D&H Distributing Co., Inc., a large
27  distribution company that sold products to Merisel and was also a competitor.
28  Merisel employees often referred to D&H Distributing simply as "D&H."  For

1   example, when two outside board members asked Jenson a series of questions
2   about "D&H's" interest in acquiring the Software Licensing Assets, Jenson
3   provided information about D&H Services, such as its role as a distributor for the
4   same software supplier as Merisel, that conflicted with information on D&H
5   Distributing's website.  When the board members subsequently questioned him
6   about those conflicts, Jenson falsely claimed that the website was in error.
7   Similarly, Jenson misled other Merisel employees to believe that the D&H
8   Services involved in the D&H transaction was affiliated with D&H Distributing.
9   He routinely referred to D&H Services by the shorthand, "D&H," when he was
10   aware that Merisel personnel routinely referred to D&H Distributing as "D&H."
11   He also told an employee that he thought that his contact at D&H Services was in a
12   "division" other than the one that Merisel typically bought software from and
13   therefore could not be of assistance in resolving an issue that had arisen when
14   D&H Distributing cut off Merisel's credit line.

15      22.     Merisel initially disclosed the D&H transaction in a Form 8-K filed
16   with the Commission on August 16, 2004 and also reported it in a Form 8-K filed
17   on August 20, 2004, both of which Jenson signed.  Merisel also reported the D&H
18   transaction as a subsequent event in its Form 10-Q filed with the Commission for
19   the quarter ended June 30, 2004, which Jenson also signed.  Those filings
20   misrepresented and failed to disclose that Jenson secretly controlled D&H Services
21   and that the D&H transaction was therefore a related party transaction under
22   Generally Accepted Accounting Principles ("GAAP").

23   **JENSON PREVIOUSLY SECRETLY SELLS MERISEL ASSETS TO HIMSELF**

24      23.     Jenson's sale of corporate assets in the D&H transaction was not the
25   first time that he sold Merisel assets to himself.  Earlier in 2004, Jenson engaged in
26   similar fraudulent conduct involving a dormant Merisel subsidiary called RKM
27   Partners.  Specifically, Jenson had (1) acquired $900,000 in convertible promissory
28   notes on behalf of RKM Partners; (2) sold RKM Partners, which had no liabilities,

1   to TDH Enterprises for just $1,000; and (3) subsequently assigned the convertible

2   promissory notes and a $52,350 account receivable from RKM Partners to TDH

3   Enterprises.

4       24.     In early 2002, Jenson had been in negotiations with a privately owned

5   automotive braking technology company.  Jenson repeatedly told the braking

6   technology company that Merisel had capital to invest and was looking for the

7   right opportunities.  Jenson ultimately invested a total of $900,000 of Merisel's

8   money in the braking technology company.  In turn, the braking technology

9   company issued four convertible promissory notes, dated April 25, 2002, April 29,

10   2002, December 31, 2002, and May 19, 2003 (the "notes"), to RKM Partners.

11   Each of those notes accrued interest at a rate of 9% per annum until April 1, 2005,

12   at which point RKM Partners had the option of converting the notes to shares in a

13   new subsidiary to be formed by the braking technology company.  Each note also

14   included the following language which was inserted at Jenson's insistence, "RKM

15   Partners, Inc. may assign this note to any affiliate of Merisel, Inc. including its

16   executive officers, at any time, and promptly thereafter shall notify [the braking

17   technology company or its new subsidiary] of the assignment."  Jenson signed the

18   notes as president of RKM Partners.

19       25.     Jenson caused Merisel to pay $900,000 for the notes in installments

20   over a period of time in 2002 and 2003.  Based on Jenson's representations,

21   however, Merisel recorded the payments as due diligence or consulting expenses.

22   For the first two payments, Jenson initialed or signed wire transfer requests.

23   Jenson falsified two emails to authorize the remaining payments.  The first email,

24   dated December 31, 2002, purportedly from a board member to Jenson, provided

25   wire transfer instructions to authorize a $150,000 payment.  Jenson forwarded that

26   email to Merisel's vice president of finance to effectuate a wire transfer and

27   independently told her that the funds were for due diligence expenses.  The second

28   email, dated May 19, 2003, purportedly from the same board member to Jenson,

8

1  provided instructions to wire $250,000.  Jenson sent that email to himself, altered
2  it, printed it out, and provided it to a Merisel employee to effectuate the wire
3  transfer.

4      26.    In about May or June 2004, Jenson caused Merisel to sell RKM
5  Partners to his entity, TDH Enterprises, for just $1,000.  Jenson purchased RKM
6  Partners despite having been warned previously by a Merisel paralegal that it
7  would be inappropriate for Jenson, Merisel's CEO, to sell a Merisel subsidiary to
8  his own family member.  Moreover, Jenson falsely told the vice president of
9  finance and another Merisel employee that Merisel needed to sell RKM Partners
10  because another company with the same name had threatened to sue Merisel if it
11  did not sell RKM Partners to that company and cease using the RKM Partners
12  name.  Jenson never disclosed in any Commission filing or to Merisel's board that
13  he, through TDH Enterprises, had purchased RKM Partners.

14      27.    On September 7, 2004, Jenson assigned the notes for which Merisel
15  had paid $900,000, and a $52,350 account receivable from RKM Partners to TDH
16  Enterprises.  The $52,350 receivable represented amounts owed by the braking
17  technology company for services Jenson secretly performed for its new subsidiary,
18  consisting of Jenson's preparation of a strategic business plan for that subsidiary
19  while he was still employed by Merisel.  On April 9, 2005, the notes were
20  superseded by five new promissory notes issued to TDH Enterprises (the "2005
21  notes") by the same braking technology company for a total amount of $979,624,
22  which notes included the $52,350 receivable.

23      28.    Jenson never disclosed to anyone at Merisel that he used $900,000 in
24  Merisel money to invest in the notes or that RKM Partners held those notes.  He
25  also never disclosed that he had performed services on behalf of the braking
26  technology company or its subsidiary.  Finally, Jenson never disclosed that he
27  purchased RKM Partners through TDH Enterprises and that he
28  / / /

1  subsequently assigned these notes, purchased with $900,000 in Merisel funds, to
2  his own company, TDH Enterprises.

3  **JENSON MAKES MATERIAL MISREPRESENTATIONS AND OMISSIONS IN**
4  **COMMISSION FILINGS AND PRESS RELEASES**

5      29.    As the CEO and CFO of Merisel, Jenson reviewed, commented on,
6  and approved all Forms 8-K, Forms 10-Q, and proxy statements that Merisel filed
7  with the Commission.  Merisel filed Forms 8-K on August 16, August 20, and
8  November 8, 2004, all of which Jenson signed.  Jenson also reviewed and
9  commented on a proxy statement that Merisel filed on October 1, 2004.

10      **A.**    **The August 16, 2004 Form 8-K**

11      30.    On August 16, Merisel filed a Form 8-K, which disclosed that Merisel
12  entered into an asset purchase agreement with D&H Services regarding the
13  Software Licensing Assets.  It also disclosed that the purchase price would equal
14  the book value of the Software Licensing Assets less certain assumed liabilities.
15  The August 16 Form 8-K, however, failed to disclose that Jenson exercised *de*
16  *facto* control of D&H Services.  It also failed to disclose that Jenson overstated the
17  value of the reserves and liabilities involved in the D&H transaction by about $2.6
18  million to Merisel's detriment because those overstatements decreased the
19  purchase price of the Software Licensing Assets.  Further, the Form 8-K failed to
20  disclose that Jenson intended to use TDH Enterprises, a company in which he had
21  a beneficial interest, to purchase D&H Services for just $50,000 after D&H
22  Services acquired the Software Licensing Assets, which included real estate with a
23  book value of about $900,000, which, in turn, had an outstanding contract for its
24  sale at $4.4 million.

25      **B.**    **The August 16, 2004 Form 10-Q**

26      31.    Also on August 16, Merisel filed its Form 10-Q for the period ended
27  June 30, 2004.  Jenson signed that Form 10-Q after reviewing it and providing
28  significant input on the disclosure of the D&H Services transaction.  That Form

1  10-Q included a description of the sale of Software Licensing Assets to D&H

2  Services, but did not disclose the related party nature of that sale. Additionally,

3  with respect to the RKM Partners sale, the Form 10-Q failed to disclose that (1)

4  Jenson sold RKM Partners to TDH Enterprises for just $1,000 even though RKM

5  Partners maintained ownership of the promissory notes for which Merisel had paid

6  $900,000; and (2) TDH Enterprise's purchase of RKM Partners was a related party

7  transaction. Accompanying that Form 10-Q was a certification as to the absence of

8  untrue statements or omissions of material fact, signed by Jenson as Merisel's

9  principal executive and financial officers.

10       **C.    The August 20, 2004 Form 8-K**

11       32.    Thereafter, Merisel filed the August 20 Form 8-K, which announced

12  that the sale of Merisel's Software Licensing Assets to D&H Services had been

13  completed. Jenson specifically added the affirmative misrepresentation to this

14  report that D&H Services was "an unrelated third party."

15       **D.    The October 1, 2004 Proxy Statement**

16       33.    On October 1, 2004, Merisel filed a definitive proxy statement, which

17  Jenson reviewed and approved for filing, that disclosed, among other things, that:

18            There are no material proceedings to which any of our directors or

19            executive officers or any of their associates, is a party adverse to the

20            Company or any of its subsidiaries, or has a material interest to the

21            company or any of its subsidiaries.

22  That disclosure is false in light of Jenson's role in selling the Software Licensing

23  Assets to D&H Services, an undisclosed related party he controlled, and his role in

24  using TDH Enterprises, another undisclosed related party he controlled, to

25  purchase RKM Partners. The proxy statement included no mention of the D&H

26  Services or RKM Partners transactions or Jenson's relationship to them.

27  / / /

28  / / /

11

E.   **The November 8, 2004 Form 8-K**

34.   Merisel issued a press release announcing its third quarter results on November 5, 2004, and filed a Form 8-K attaching the press release with the Commission three days later. This Form 8-K for the three-month period ended September 30, 2004, failed to disclose Merisel's $2.6 million loss resulting from the D&H transaction. Although the Form 8-K should have disclosed a net loss of $3,311,000, it instead reported a $711,000 net loss, a 78.5% understatement. Similarly, for the nine months ended September 30, 2004, the November 5 press release and November 8 Form 8-K should have reported a net loss of about $2,633,000, but instead reported a $33,000 loss, a 99% understatement.

**JENSON LIES TO MERISEL'S AUDITORS**

35.   Jenson signed an August 16, 2004 management representation letter to Merisel's auditors in connection with the filing of the Form 10-Q for the period ended June 30, 2004. Given his role in the D&H transaction and the RKM Partners sale, Jenson knew the letter falsely represented, among other things, that: (1) the interim consolidated financial statements had been prepared and presented in conformity with GAAP; (2) there were no material transactions that had not been properly recorded in the accounting records underlying the interim consolidated financial information; (3) there were no reportable conditions or material weaknesses in the companies' internal controls; (4) Merisel had no knowledge of any fraud involving its management that would have a material effect on the interim consolidated financial statements; (5) related party transactions had been appropriately identified and properly recorded and disclosed in the interim consolidated financial statements; and (6) no events had occurred through the date of the letter that would require disclosure in the interim consolidated financial reports.

/ / /

/ / /

12

1

## FIRST CLAIM FOR RELIEF

2

**FRAUD IN CONNECTION WITH THE PURCHASE OR SALE OF SECURITIES**

3

**Violations and Aiding and Abetting Violations of Section 10(b) of the**

4

**Exchange Act and Rule 10b-5 thereunder**

5

**(Against All Defendants)**

6      36.    The Commission realleges and incorporates by reference paragraphs 1

7  through 35 above.

8      37.    Jenson, by engaging in the conduct described above, directly or

9  indirectly, in connection with the purchase or sale of a security, by the use of

10  means or instrumentalities of interstate commerce, of the mails, or of the facilities

11  of a national securities exchange, with scienter:

12          a.    employed devices, schemes, or artifices to defraud;

13          b.    made untrue statements of a material fact or omitted to state a

14                material fact necessary in order to make the statements made,

15                in the light of the circumstances under which they were made,

16                not misleading; or

17          c.    engaged in acts, practices, or courses of business which

18                operated or would operate as a fraud or deceit upon other

19                persons.

20      38.    By engaging in the conduct described above, Jenson violated, and

21  unless restrained and enjoined will continue to violate, Section 10(b) of the

22  Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. §

23  240.10b-5.

24      39.    TDH knowingly provided substantial assistance to Jenson's violations

25  of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

26      40.    By engaging in the conduct described above and pursuant to Section

27  20(e) of the Exchange Act, 15 U.S.C. § 78t(e), TDH aided and abetted Jenson's

28  violations, and unless restrained and enjoined will continue to aid and abet

1 | violations, of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule
2 | 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

3 | **SECOND CLAIM FOR RELIEF**

4 | **ISSUER REPORTING VIOLATIONS**

5 | **Aiding and Abetting Violations of Section 13(a) of the Exchange Act and**
6 | **Rules 12b-20, 13a-11, and 13a-13 thereunder**

7 | **(Against All Defendants, Except as to Rule 13a-11, Which Is Against**
8 | **Defendant Jenson Only)**

9 |     41.    The Commission realleges and incorporates by reference paragraphs 1
10 | through 35 above.

11 |     42.    Merisel violated Section 13(a) of the Exchange Act, 15 U.S.C. §
12 | 78m(a), and Rules 12b-20, 13a-11, and 13a-13 thereunder, 17 C.F.R. §§ 240.12b-
13 | 20, 240.13a-11, & 240.13a-13, by filing with the Commission materially false and
14 | misleading current reports on Form 8-K, filed August 16, 2004, August 20, 2004,
15 | and November 8, 2004, and a quarterly report on Form 10-Q for the quarter ended
16 | June 30, 2004, filed August 16, 2004.

17 |     43.    Jenson and TDH knowingly provided substantial assistance to
18 | Merisel's violations of Section 13(a) of the Exchange Act and Rules 12b-20, and
19 | 13a-13 thereunder, and Jenson additionally knowingly provided substantial
20 | assistance to Merisel's violation of Exchange Act Rule 13a-11.

21 |     44.    By engaging in the conduct described above and pursuant to Section
22 | 20(e) of the Exchange Act, 15 U.S.C. § 78t(e), Jenson and TDH aided and abetted
23 | Merisel's violations, and unless restrained and enjoined will continue to aid and
24 | abet violations, of Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and
25 | Rules 12b-20 and 13a-13 thereunder, 17 C.F.R. §§ 240.12b-20 & 240.13a-13, and
26 | Jenson aided and abetted Merisel's violations, and unless restrained and enjoined
27 | will continue to aid and abet violations of Rule 13a-11, 17 C.F.R. § 240.13a-11.
28 | / / /

### THIRD CLAIM FOR RELIEF

### RECORD KEEPING VIOLATIONS

**Aiding and Abetting Violations of Section 13(b)(2)(A) of the Exchange Act and Violations of Rule 13b2-1 thereunder**

**(Against Defendant Jenson)**

45.     The Commission realleges and incorporates by reference paragraphs 1 through 35 above.

46.     Merisel violated Section 13(b)(2)(A) of the Exchange Act, 15 U.S.C. § 78m(b)(2)(A), by failing to make or keep books, records and accounts, which, in reasonable detail, accurately and fairly reflected its transactions and disposition of its assets.

47.     Jenson knowingly provided substantial assistance to Merisel's violation of Section 13(b)(2)(A) of the Exchange Act.

48.     By engaging in the conduct described above and pursuant to Section 20(e) of the Exchange Act, 15 U.S.C. § 78t(e), Jenson aided and abetted Merisel's violations, and unless restrained and enjoined will continue to aid and abet violations, of Section 13(b)(2)(A) of the Exchange Act, 15 U.S.C. § 78m(b)(2)(A).

49.     By engaging in the conduct described above, Jenson violated Exchange Act Rule 13b2-1 by, directly or indirectly, falsifying or causing to be falsified Merisel's books, records, and/or accounts subject to Section 13(b)(2)(A) of the Exchange Act.  Unless restrained and enjoined, Jenson will continue to violate Rule 13b2-1, 17 C.F.R. § 240.13b2-1.

### FOURTH CLAIM FOR RELIEF

### INTERNAL CONTROLS VIOLATIONS

**Aiding and Abetting Violations of Section 13(b)(2)(B) of the Exchange Act**

**(Against Defendant Jenson)**

50.     The Commission realleges and incorporates by reference paragraphs 1 through 35 above.

1    51.    Merisel violated Section 13(b)(2)(B) by failing to devise and maintain

2    a system of internal accounting controls sufficient to provide reasonable assurances

3    that:

4              a.    transactions were executed in accordance with management's

5                    general or specific authorization;

6              b.    transactions were recorded as necessary (I) to permit

7                    preparation of financial statements in conformity with generally

8                    accepted accounting principles or any other criteria applicable

9                    to such statements, and (II) to maintain accountability for

10                   assets;

11             c.    access to assets was permitted only in accordance with

12                   management's general or specific authorization; and

13             d.    the recorded accountability for assets was compared with the

14                   existing assets at reasonable intervals and appropriate action

15                   was taken with respect to any differences.

16    52.    Jenson knowingly provided substantial assistance to Merisel's

17    violations of Section 13(b)(2)(B) of the Exchange Act.

18    53.    By engaging in the conduct described above and pursuant to Section

19    20(e) of the Exchange Act, 15 U.S.C. § 78t(e), Jenson aided and abetted Merisel's

20    violations, and unless restrained and enjoined will continue to aid and abet

21    violations, of Section 13(b)(2)(B) of the Exchange Act, 15 U.S.C. § 78m(b)(2)(B).

22                           **FIFTH CLAIM FOR RELIEF**

23    **CIRCUMVENTION OF INTERNAL CONTROLS AND FALSIFICATION OF RECORDS**

24              **Violations of Section 13(b)(5) of the Exchange Act**

25                      **(Against Defendant Jenson)**

26    54.    The Commission realleges and incorporates by reference paragraphs 1

27    through 35 above.

28    / / /

1    55.   Jenson, by engaging in the conduct described above, knowingly
2    circumvented or knowingly failed to implement a system of internal accounting
3    controls, or knowingly falsified books, records, or accounts described in Section
4    13(b)(2) of the Exchange Act.

5    56.   By engaging in the conduct described above, Jenson violated, and
6    unless restrained and enjoined, will continue to violate, Section 13(b)(5) of the
7    Exchange Act, 15 U.S.C. § 78m(b)(5).

8                          **SIXTH CLAIM FOR RELIEF**
9                **VIOLATIONS OF CERTIFICATION REQUIREMENTS**
10                 **Violations of Exchange Act Rule 13a-14**
11                        **(Against Defendant Jenson)**

12   57.   The Commission realleges and incorporates by reference paragraphs 1
13   through 35 above.

14   58.   Jenson, by engaging in the conduct described above, in signing the
15   certifications included with Merisel's Form 10-Q for the quarter ended June 30,
16   2004, filed August 16, 2004, falsely certified, among other things, that: (1) the
17   report did not contain any untrue statement of material fact or omit to state a
18   material fact necessary to make the statements made, in light of the circumstances
19   under which such statements were made, not misleading; and (2) the financial
20   statements and other financial information included in the Form fairly presented, in
21   all material respects, the financial condition, results of operations, and cash flows
22   of Merisel.

23   59.   By engaging in the conduct described above, Jenson violated, and
24   unless restrained and enjoined will continue to violate, Exchange Act Rule 13a-14,
25   17 C.F.R. § 240.13a-14.

26   / / /
27   / / /
28   / / /

1          <u>SEVENTH CLAIM FOR RELIEF</u>

2          FALSE STATEMENTS TO ACCOUNTANTS

3          Violations of Exchange Act Rule 13b2-2

4          (Against Defendant Jenson)

5          60.    The Commission realleges and incorporates by reference paragraphs 1

6    through 35 above.

7          61.    Jenson, by engaging in the conduct described above, directly or

8    indirectly:

9                 a.    made or caused to be made a materially false or misleading

10                      statement to an accountant in connection with; or

11                b.    omitted to state, or caused another person to omit to state, a

12                      material fact necessary in order to make statements made, in

13                      light of the circumstances under which such statements were

14                      made, not misleading, to an accountant in connection with:

15                      i.     an audit, review or examination of the financial

16                             statements of the issuer required to be made pursuant to

17                             this subpart; or

18                      ii.    the preparation or filing of any document or report

19                             required to be filed with the Commission.

20         62.    By engaging in the conduct described above, Jenson violated, and

21   unless restrained and enjoined, will continue to violate, Exchange Act Rule 13b2-

22   2, 17 C.F.R. § 240.13b2-2.

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

1

### EIGHTH CLAIM FOR RELIEF

2

### VIOLATIONS OF PROXY SOLICITATION REQUIREMENTS

3

**Violations and Aiding and Abetting Violations of Section 14(a) of the**

4

**Exchange Act and Rule 14a-9 thereunder**

5

**(Against All Defendants)**

6      63.    The Commission realleges and incorporates by reference paragraphs 1

7 through 35 above.

8      64.    Jenson, by engaging in the conduct described above, engaged in

9 solicitations by means of a proxy statement, form of proxy, notice of meeting or

10 other communication, written or oral, that contained a statement which, at the time

11 and in light of the circumstances under which it was made, was false or misleading

12 with respect to a material fact, or which omitted to state a material fact necessary

13 in order to make the statements therein not false or misleading.

14      65.    By engaging in the conduct described above, Jenson violated, and

15 unless restrained and enjoined will continue to violate, Section 14(a) of the

16 Exchange Act, 15 U.S.C. § 78n(a), and Rule 14a-9 thereunder, 17 C.F.R. §

17 240.14a-9.

18      66.    TDH knowingly provided substantial assistance to Jenson's violation

19 of Section 14(a) of the Exchange and Rule 14a-9 thereunder.

20      67.    By engaging in the conduct described above and pursuant to Section

21 20(e) of the Exchange Act, 15 U.S.C. § 78t(e), TDH aided and abetted Jenson's

22 violations, and unless restrained and enjoined will continue to aid and abet

23 violations, of Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and Rule

24 14a-9 thereunder, 17 C.F.R. § 240.14a-9.

25 / / /

26 / / /

27 / / /

28 / / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that the Court:

**I.**

Issue findings of fact and conclusions of law that the Defendants committed the alleged violations.

**II.**

Issue a judgment, in a form consistent with Fed. R. Civ. P. 65(d), permanently enjoining Defendant Jenson and his agents, servants, employees, and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Sections 10(b), 13(b)(5), and 14(a) of the Exchange Act, 15 U.S.C. §§ 78j(b), 78m(b)(5), & 78n(a), and Rules 10b-5, 13a-14, 13b2-1, 13b2-2, and 14a-9 thereunder, 17 C.F.R. §§ 240.10b-5, 240.13a-14, 240.13b2-1, 240.13b2-2, & 240.14a-9, and from aiding and abetting violations of Sections 13(a), 13(b)(2)(A), and 13(b)(2)(B) of the Exchange Act, 15 U.S.C. §§ 78m(a), 78m(b)(2)(A), & 78m(b)(2)(B), and Rules 12b-20, 13a-11, and 13a-13 thereunder, 17 C.F.R. §§ 240.12b-20, 240.13a-11, & 240.13a-13.

**III.**

Issue a judgment, in a form consistent with Fed. R. Civ. P. 65(d), permanently enjoining TDH and its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Sections 10(b) and 14(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) & 78n(a), and Rules 10b-5 and 14a-9 thereunder, 17 C.F.R. §§ 240.10b-5 & 240.14a-9, and aiding and abetting violations of Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and Rules 12b-20 and 13a-13 thereunder, 17 C.F.R. §§ 240.12b-20 & 240.13a-13.

/ / /

### IV.

Order Defendant Jenson to pay a civil penalty pursuant to Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).

### V.

Enter an order, pursuant to Section 21(d)(2) of the Exchange Act, 15 U.S.C. § 78u(d)(2), barring Jenson from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act, 15 U.S.C. §78l, or that is required to file reports pursuant to Section 15(d) of the Exchange Act, 15 U.S.C. § 78o(d).

### VI.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

### VII.

Grant such other and further relief as this Court may determine to be just and necessary.

DATED: March 4 , 2008

Robert H. Conrrad
Attorney for Plaintiff
Securities and Exchange Commission

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> PLAINTIFF(S) <br><br> v. <br> TIMOTHY N. JENSON AND TDH ENTERPRISES, LLC, <br><br><br> DEFENDANT(S). | CASE NUMBER <br><br> **SACV 08 - 0241 CJC (MLGx)** <br><br><br><br> **SUMMONS** |

TO:    DEFENDANT(S): TIMOTHY N. JENSON AND TDH ENTERPRISES, LLC

A lawsuit has been filed against you.

Within __20__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, __Robert H. Conrrad_____, whose address is __5670 Wilshire Blvd. 11th Floor, Los Angeles, CA 90036_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: __3/04/08_____

By: _____

Deputy Clerk
LORI ANDERSON
*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)

SECURITIES AND EXCHANGE COMMISSION

**DEFENDANTS**

TIMOTHY N. JENSON AND TDH ENTERPRISES, LLC

**(b)** County of Residence of First Listed Plaintiff (Except in U.S. Plaintiff Cases):

County of Residence of First Listed Defendant (In U.S. Plaintiff Cases Only):
Orange County

**(c)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Robert H. Conrad (323) 965-3998
Securities and Exchange Commission
5670 Wilshire Boulevard, 11th Floor
Los Angeles, CA 90036

Attorneys (If Known)
Robert M. Bernstein, Attorney at Law    Irving Einhorn, Esq.
9595 Wilshire Boulevard, Suite 900      1710 10th Street
Beverly Hills, CA 90212                  Manhattan Beach, CA 90266
(310) 477-1480                          (310) 798-7216

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☑ 1 U.S. Government Plaintiff    ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** – For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify):    ☐ 6 Multi-District Litigation    ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☐ Yes   ☑ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No    ☑ MONEY DEMANDED IN COMPLAINT: $ 275,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
The Complaint alleges violations of the federal securities laws: 15 U.S.C. §§ 78j(b), 78m(b)(5) & 78n(a), 78m(a), 78m(b)(2)(A) & 78m(b)(2)(B) and 17 C.F.R. §§ 240.10b-5, 240.13a-14, 240.13b2-1, 240.13b2-2, 240.14a-9, 240.12b-20, 240.13a-11 & 240.13a-13, thereunder

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS / PERSONAL INJURY | TORTS / PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☑ 850 Securities/Commodities /Exchange | ☐ 190 Other Contract | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 195 Contract Product Liability | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | ☐ 630 Liquor Laws | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 196 Franchise | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | REAL PROPERTY | | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 210 Land Condemnation | | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 220 Foreclosure | | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 230 Rent Lease & Ejectment | | | | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 240 Torts to Land | | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 245 Tort Product Liability | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 290 All Other Real Property | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

**VIII(a). IDENTICAL CASES:** Has this action been previously filed and dismissed, remanded or closed? ☑ No ☐ Yes

If yes, list case number(s):

**SACV 08 - 0241 CJC (MLGx)**

**FOR OFFICE USE ONLY:** Case Number:

---

CV-71 (07/05)

CIVIL COVER SHEET

Page 1 of 2

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Cormac J. Carney  and the assigned discovery Magistrate Judge is Marc Goldman.

The case number on all documents filed with the Court should read as follows:

### SACV08- 241 CJC (MLGx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

---

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [X] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.

---

CV-18 (03/06)          NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY